Mr. Dick for the defendants, was not present at the argument.

# Hieronimus Warner *et al.* ex'rs. of Peter Fiss *against* the heirs and terretenants of Jabez Emory.

Money received by delinquent collectors for county rates and levies under the act of 20th March 1725, or health office taxes under the act of 24th April 1794, or funding taxes of 16th March 1785, remain a lien on their lands, after they should have paid the money into the treasury: *Aliter* of carriage taxes under the act of 20th March 1783.

CASE stated for the opinion of the court, on a *scire facias* brought on a mortgage, dated 18th August 1795, for 1000 dollars; recorded two days afterwards.

It is agreed, that the mortgage in question was duly executed, and given for a valuable consideration. Jabez Emory, the mortgagor, whose heirs and terretenants the defendants are, was duly appointed on the 4th June 1791, a collector of county rates and levies, in and for the city and county of Philadelphia, to collect the said rates and levies for that year; and was also duly appointed to the same office in the years 1792, 1793, and 1794. By virtue of the said several appointments, he the said Jabez *undertook the collection of the said taxes, and on the day of the said mortgage being given, and for six months [*51 before, was indebted to the county of Philadelphia in the sum of $1235\frac{58}{100}$, for county and hospital taxes of the said county; and was also indebted to the said county, or to the state, before the same day, for carriage taxes, under the act of 20th March 1783, in $476\frac{94}{100}$ dollars. On the same 4th day of June, in the same year, he was appointed collector, and authorized as such, to receive the unpaid funding, county, and carriage taxes for the years 1785, 1786, 1787, 1788 and 1789, and county, carriage and cell taxes for 1790, in the county of Philadelphia, which remained due and uncollected on the books of Joseph Stiles and Daniel

Drais, who in those several years had been respectively appointed to collect the said taxes in the said county ; and on the day of the said mortgage being given, and long before, had been indebted to the public in the sum of $845\frac{7}{100}$ dollars. The aggregate of the above balances due from the said Jabez Emory is $2558\frac{23}{100}$ dollars, monies by the said Jabez received and collected.

The question submitted to the opinion of the court is, whether the aggregates of the said several arrearages, or either of them, are by law a lien on the real estate of the said Jabez, from the time he became indebted for the same, so as to exclude the said mortgage, on which this suit is founded. If the court should be of opinion, that they or either of them are so, then it is agreed that the proceeds of sales of the mortgaged premises shall be appropriated in the first instance to the payment of such lien.

On the argument, Mr. M. Levy for the plaintiff admitted that $1253\frac{58}{100}$ dollars, due for the county and hospital taxes, remained chargeable on the real estate of the collector, and took place of the mortgage. The words of § 23, of the law of 20th March 1724–5, as to county rates and levies, expressly create such lien.— " All gifts, grants, and sales, which shall be made by any of the " said delinquent collectors, of any of their said estates, after " the time they should have paid the money or effects arising " from the said assessments, unless the estate·so seized shall be " sufficient to answer what they are in arrear, are hereby de- " clared to be fraudulent, and shall not prevent or avoid the " seizures and sales hereby appointed to be made thereof as " aforesaid." 1 Dall. St. Laws 218. And the health office act of the 24th April 1794, § 19, puts the taxes under that law, on the footing of the taxes for county rates and levies. 3 Dall. St. · Laws 572.

\*52]    \*It was also admitted by Mr. Ingersoll, of counsel, with the commissioners of the county of Philadelphia, that $476\frac{94}{100}$ dollars, due for carriage taxes from the collector, were no lien on his lands. This act was passed 20th March 1783, and by § 6, the commissioners, assessors and collectors, were vested with the like powers, as were given by the law to raise supplies, passed on the 27th March 1782. 2 Dall. Laws 96. The 28th and 29th sections of this former act, pursued the 20th, 21st, and 22d sections of the county rates and levies act, but the vacating of grants, gifts, &c. in the 23d sect. is omitted therein. 2 Dall. Laws 12.

The controversy therefore was narrowed down to the $845\frac{7}{100}$ dollars, collected on the former duplicates of Stiles and Drais. On this head, it was contended on the part of the plaintiffs, that the former collectors having been originally appointed, and accepted the appointment, the liens attached on their estates only. By § 9 of the act of 1725, they are to demand of the parties the

respective sums wherewith they are chargeable, and give notice of the day of appeal, which Emory could not do, the time being passed.   By § 14, they are to account in six weeks, and pay the whole money in three months.   By § 15, their neglects are to be certified.   By § 19, they are to be fined in case of neglect. By § 20, process was to issue against their estates, which by § 21, were to be sold; and by § 23, their gifts, grants and sales, after they should have paid in their money, are declared fraudulent.   But these different provisions only relate to the collectors who received the trust originally, and not to subsequent appointments.

As to the funding law of 16th March 1785, (part whereof is only inserted in 2 Dall. St. Laws 256, but the whole of it in the first edition of laws, pa. 460,) the 36th section giving the commissioners power to appoint collectors, who are to notify each person of the sum assessed on him, and of the day and place of appeal, and the 38th section directing the commissioners to transmit the duplicates to the district collectors, shew that the liens apply to the first collectors only.   It may be said of the legislature, in both instances, *voluit sed non dixit.*

Such liens are of a dangerous nature, which cannot, with common prudence, be discovered in the public offices.   They are justly odious, when they operate hardly against persons who fairly advance their money on an honest consideration, and should be strictly construed.   Indeed, by the act of 3d April 1794, 3 Dall. Laws 526, respecting decedents' estates, the commonwealth is to be last paid.

As to the interest, in either of the cases, it is contended, that *it can only be computed from the date of the mortgage, inasmuch as reasonable diligence ought to have been [*53 used by the county commissioners, to compel the payment of the collector's outstanding balances.

Mr. Ingersoll answered, Whether liens are founded on sound policy, are reasonable or not, must be submitted to the legislature ; the judiciary branch only decide on them.   The liens on the estates of deceased persons are by many thought highly inconvenient, but the legislature disapproved of the specification clause first introduced into the bill, and thought proper to insert the term demands in lieu thereof.

May it not, however, be asked, why the liens admitted to extend to the collectors first appointed, should not also be applicable to others coming in their stead ?   Though a collector dies, or is removed from his office for misconduct, still the public interests require that the assessments should be collected.   But it does not appear from the case as stated, that Stiles and Drais have received any monies which remain unpaid, and that consequent liens have attached on their estates, or that they are living or dead.   Their successors clearly are either within all the provisions of the laws, or under no part thereof.

It is to be inquired, whether the plaintiff's construction is

[Commissioners of Southwark *v.* Neil.]

warranted by the expressions of the legislature. By the 9th section of the law of March 1725, collectors are to be appointed from time to time, and all the different clauses relied on by the plaintiff's counsel make use of the words said collectors, which comprehend all who have been, or shall be nominated, to discharge that trust. Suppose under the 16th section, that Stiles and Drais had made no demand of the taxes, could not Emory make one? Or if under the 17th section, they had made no distress for non-payment, would not Emory be competent to make one? And would not Emory and his estate, in such instances, be equally obnoxious to the several provisions in §§ 20, 21, 22 and 23 of the act? Again, suppose a sheriff removed from office by death or otherwise, will not the law, which created duties, obligations and penalties on him, descend on his successor?

The words of the funding act still appear stronger than the law for raising county rates and levies. The 36th section impowers the commissioners, annually or oftener, if necessary, to appoint collectors; and in the close of the 44th section, it is declared, that "all the estate real and personal of such delinquent "collector, is and shall be taken and deemed to be bound, as a "security for the payment of such sum, at and from the expira- "tion of ninety days, as fully to all intents and purposes as if \*54] ""judgment had then been entered against him for the "said debt, in a court of record." Both acts clearly contemplate a summary remedy to be given against delinquent collectors, either those originally appointed or their successors.

There is little room for controversy, as to the period of commencement of interest. Where one has received money belonging to another, and has retained it without the consent of the owner, it is to be considered in the same light as money lent, and ought to carry interest. 1 Dall. 349.

BY THE COURT. The lien respecting the carriage tax has been properly given up. On a full examination of the laws, we see no reason for a distinction between the other two items of the accounts against the collector, and are of opinion, that the 1235 dollars $\frac{58}{100}$ for the county and hospital taxes, and the 845 dollars $\frac{71}{100}$ uncollected by Stiles and Drais, and afterwards received by Emory, remain charged on his real estate, in preference to the mortgage in question, together with interest from the respective times, when by law he should have paid the same into the treasury.